**CALIFORNIA HOSPITAL ASSOCIATION, a non-profit California corporation; California Restaurant Association, a non-profit California corporation; California Manufacturers Association, a non-profit California corporation; California Chamber of Commerce, a non-profit California corporation; Merchants and Manufacturers Association, a non-profit California corporation; California Hotel and Motel Association, a non-profit California corporation, Plaintiffs,**

v.

**Patrick W. HENNING, Labor Commissioner, Division of Labor Standards Enforcement, Department of Industrial Relations, State of California, Defendants.**

No. CV 82–6659 RG(Gx).

United States District Court,
C.D. California,
Los Angeles Division.

Sept. 8, 1983.

Musick, Peeler & Garrett, Richard J. Simmons, Los Angeles, Cal., for plaintiffs.

Louis Giannini, Chief Counsel, Div. of Labor Standards Enforcement, San Francisco, Cal., for defendants.

Laurence Gold, Sp. Counsel, AFL–CIO, Washington, D.C., Fred H. Altshuler, Marsha S. Berzon, Stephen P. Berzon, San Francisco, Cal., for amicus AFL–CIO.

## ORDER

GADBOIS, District Judge.

This action is before the court on cross-motions for summary judgment. There are no genuine issues of material fact, and summary judgment is appropriate for disposition of the matter.

Plaintiffs are trade associations who bring the action on behalf of themselves and their members. Both the associations and their members sponsor and administer vacation plans and programs for their employees. Defendant is the Labor Commissioner of the State of California, whose Division of Labor Standards Enforcement issued, on September 30, 1982, internal Policy and Procedure Memorandum 82–4 ("the enforcement policy"), which has the effect of regulating the vacation plans and programs of plaintiffs and their members. Plaintiffs' chief contention is that this regulation is prohibited by principles of federal preemption invoked by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").[1]

## I. EXTENT OF ERISA COVERAGE.

█ It is plaintiffs' position that all employee vacation plans and programs are covered by ERISA. Coverage of that statute is stated in Sec. 4:

Except as provided in subsection (b) and in sections 201, 301, and 401, this title shall apply to any employee benefit plan . . . .

Sec. 3(3) provides:

The term "employee benefit plan" or "plan" means an employee welfare bene-

fit plan or an employee benefit plan or a plan which is both . . . .

"Employee welfare benefit plan" is, in turn, defined by Sec. 3(1) as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, *or vacation benefits,* apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, . . . .

[Emphasis added.]

Accordingly, it would appear from the plain language of the statute that Congress intended ERISA coverage to embrace every plan or program of an employer engaged in activities affecting interstate commerce and established for the purposes of providing vacation benefits. Defendant disputes this conclusion.

Defendant first contends that the only welfare benefit plans subject to ERISA are formal plans funded by a trust, citing § 403 and *Taggart Corp. v. Life & Health Benefits Adm. Inc.,* 617 F.2d 1208 (5th Cir.1980). Section 403, however, only requires a trust if specific assets are committed to a plan, as distinguished from a plan funded by an employer's general assets. With respect to *Taggart,* if it did in fact define employee welfare benefit plans by reference to trust funding—a matter which is not entirely clear—it is contrary to the statutory scheme and should be rejected in favor of the well-reasoned opinion in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), which observed:

There is no requirement of a formal, written plan in either ERISA's coverage

---

1. Further references to ERISA will employ numeration of the Act itself rather than that of

the United States Code.

section ... or its definitions section ....
Once it is determined that ERISA covers a plan, the Act's fiduciary and reporting provisions do require the plan to be established pursuant to a written instrument ...; but clearly these are only the responsibilities of administrators and fiduciaries of plans covered by ERISA and are not prerequisites to coverage under the Act.

*Id.* at 1372.

In short, by referring to § 401, *et seq.,* of the Act, defendant is trying to back into the coverage result he desires. The process is illogical. If any of the vacation plans of plaintiffs or their members should be in writing or funded by trusts and are not, the issue thus presented is compliance, not coverage.

In arguing for restricted ERISA coverage of vacation plans defendant further relies on Department of Labor regulations promulgated shortly after ERISA's enactment. 29 C.F.R. § 2510.3–1 was designed to clarify the definition of "employee welfare benefit plan" and to identify certain practices which are not subject to Title I. Subsection 3–1(b) excludes from the definition of "employee welfare benefit plan"—

(3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically able to perform his or her duties and not absent for medical reasons ... performs no duties; for example—

(i) Payment of compensation while an employee is on vacation or absent on a holiday ....

Plaintiffs respond that this regulation does not exempt every vacation program in which benefits are paid from general assets of the employer and observe that such a construction would undoubtedly exempt the great majority of such programs. Rather, they say, it applies only to those situations where there is an employer's discretionary "practice" rather than a plan or program to which the employer is committed, by contract or otherwise. That is a sensible view of the regulation, since there is a decided difference between the established plan or program defined in *Donovan,* (*i.e.,* (i) intended benefits, (ii) intended beneficiaries, (iii) a source of financing and (iv) a procedure for application and collection of benefits) and the situation where an employer might on occasion simply tell a worker to take a few days off. In support of their argument plaintiffs point to a number of other regulations and Department of Labor Advisory Opinions which apply Title I of ERISA to clearly unfunded programs.[2]

It is not necessary to the decision in this case, however, to adopt plaintiffs' construction of subsection 3–1(b)(3). If that regulation does indeed intend ERISA exemption of every unfunded vacation program, it is at clear odds with language of the statute itself and an invalid arrogation of power by the Department.

The conclusion is inescapable that any plan, fund, or program, as those terms are defined by *Donovan,* maintained for employee vacation benefits by an employer engaged in activities affecting interstate commerce, is an employee welfare benefit plan subject to ERISA coverage, irrespective of whether such arrangement is funded, trusteed, or embodied in a writing.

## II. PREEMPTION OF STATE LAWS.

■ Federal preemption in this field is stated in ERISA § 514:

Sec. 514. (a) Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b).

This provision has been aptly termed the most sweeping federal preemption statute ever enacted by Congress. Any doubt as to its ambit was recently put to rest by the Supreme Court in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. ——, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Also addressed by *Shaw* is the contention of defendant that state regulation is permissible in those ar-

2. *E.g.,* 29 C.F.R. 2520.104–20(b)(2)(i), and Advisory Opinions 81–55A, 75–128, 78–3A.

eas not specifically covered by ERISA. The Court observed:

> Nor, given the legislative history, can § 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

463 U.S. at ——, 103 S.Ct. at 2900–01. There can be no question but that the ERISA preemption provision prohibits all state regulation relating to employee welfare benefit plans.

## III. THE STATE REGULATION HERE IN ISSUE.

The defendant's enforcement policy has its foundation in California Labor Code § 227.3, which provides in part that, when an employee is discharged without having used his vested vacation time "... all vested vacation shall be paid to him as wages at his final rate in accordance with ... [the] employer policy respecting eligibility or time served ...." The section also prohibits forfeiture of vested vacation time on termination. In 1982 the Supreme Court of California confronted the question of when vacation time becomes "vested." *Suastez v. Plastic Dress-Up Co.,* 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122. Construing § 227.3, a unanimous Court held that vacation benefits vest as labor is rendered and that an employee, on termination, must be paid—as wages—his prorata share of such benefits. The opinion did not discuss the issue of ERISA preemption, which was first raised in a petition for rehearing. Defendant's enforcement policy, which sets out guidelines for administering employee claims in light of *Suastez,* followed the denial of rehearing by a few days.

It is obvious that the enforcement policy is a state law within the meaning of § 514, as are also Labor Code § 227.3 and *Suastez,* to the extent that they relate to employee welfare benefit plans. Subsection (c) of § 514 provides:

> (1) the term "state law" includes all laws, decisions, rules, regulations, or other state action having the effect of law, of any State.

As the Court in *Shaw* observed:

> A law "relates to" an employee benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan.

463 U.S. at ——, 103 S.Ct. at 2900.

The enforcement policy clearly "relates to" any California vacation plan since it directly regulates participation, vesting and benefit calculation.

This court accordingly concludes that defendant's enforcement policy, insofar as it purports to regulate those vacation plans of plaintiffs and their members which are in fact employee welfare benefit plans under ERISA, is an invalid assertion of state authority in an area which Congress specifically intended federal regulation to pre-empt.

Judgment is ordered for plaintiffs. Since the case is determined by ERISA preemption it is not necessary to address plaintiffs' alternative contentions.