**NATIONAL METALCRAFTERS, A DIVISION OF KEYSTONE CONSOLIDATED INDUSTRIES, a Delaware corporation, Plaintiff-Counterdefendant,**

v.

**Donald J. McNEIL, Superintendent, Wage Claims Division, Illinois Department of Labor, Defendant,**

**and**

**Betty Johnson, et al., Intervenors-Defendants-Counterplaintiffs.**

**No. 84 C 2190.**

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1985.

See also, D.C., 103 F.R.D. 536.

Philip V. Carter, Mark A. Casciari, Robert C. Long, J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff-counterdefendant.

Irving M. Friedman, Ann C. Hodges, Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for defendant and intervenors-defendants-counterplaintiffs.

Richard J. Puchalski, Sp. Asst. Atty. Gen., Chicago, Ill., for defendant.

## Memorandum

LEIGHTON, District Judge.

This is a lawsuit seeking to enjoin the Illinois Department of Labor from commencing proceedings to enforce a determination made against plaintiff pursuant to state law. Specifically, the Department, through defendant McNeil, found that plaintiff violated Illinois law by willfully refusing to pay claimants (intervenors

here) vacation pay due under collective bargaining agreements.

The crux of plaintiff's cause of action is that Illinois law, as it relates to the vacation pay sought by intervenors, is pre-empted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* According to plaintiff, therefore, state court action or intervention to enforce the Department's demand for payment is improper. Defendant and intervenors, however, contend that federal pre-emption is inapplicable to what are essentially contract claims under collective bargaining agreements. In their view, a state court can fully adjudicate these claims.

The cause is before the court on the motions of plaintiff, defendant, and intervenors, pursuant to Fed.R.Civ.P. 56, for summary judgment on plaintiff's complaint. The parties do not dispute any material facts, and each moves for judgment as a matter of law, based on their pre-emption positions. Oral and written presentations having been submitted to the court, the only issue to be resolved is whether the Department's exercise of jurisdiction conflicts with any federal statute, specifically, whether it is pre-empted by either ERISA or the NLRA. That issue arises out of the following facts.

I

Plaintiff, National Metalcrafters, a division of Keystone Consolidated Industries, a Delaware corporation with its principal place of business in Dallas, Texas, operates manufacturing facilities in Rockford, Illinois. Employees at plaintiff's Rockford plant traditionally have been represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its local Union No. 449 (the "Union"). Over the years the company and the Union entered into a number of consecutive collective bargaining agreements covering the employment terms of Union employees. The most recent agreement began on April 14, 1980, and expired on April 16, 1983. Section 6.1 of the agreement, entitled "Amount of Vacation & Vacation Pay," obligated the company to pay vacation benefits to Union employees based on length of service with the company.

Defendant Donald J. McNeil is Superintendent of the Wage Claims Division of the Illinois Department of Labor. He administers the provisions of the Illinois Wage Payment & Collection Act, Ill.Rev.Stat., ch. 48 § 39m–1, m–11 (the "Act"), a statute enacted to ensure that employers pay employees what is due under the terms of collective bargaining agreements. An employer who refuses to pay wages or final compensation earned under a Union contract violates the Act.

Prior to expiration of the 1980 bargaining agreement, plaintiff and the Union engaged in negotiations for a new agreement. As part of the new contract, plaintiff proposed a reduction in vacation benefits, the stated reason being to equalize Union employees' and salaried employees' vacation benefits. Plaintiff and the Union reached a bargaining impasse and when the 1980 agreement expired on April 16, 1983, the Union began a strike against the company which continues to the present day.

In May, 1983, the company unilaterally implemented the vacation benefits reduction plan, and in July, 1983, paid vacation benefits based on the new plan rather than under the 1980 agreement. Subsequently, the Union filed an unfair labor practice charge with the National Labor Relations Board (NLRB) alleging that the company had violated the NLRA by, among other things, not paying vacation benefits as embodied in the terms of the 1980 agreement.[1] At about the same time, 250 Union employees brought claims before the Wage Claims Division of the Illinois Department of La-

---

1. In March 1984, the Union withdrew, without prejudice, its charge on the vacations benefit issue.

bor, pursuant to the Act, for vacation wages earned and not paid by the company.

Following briefing and oral argument, defendant McNeil found that the company had withheld vacation pay from the employees in violation of the Act. He ordered it to pay claimants, within 15 days, the difference between the amounts of vacation pay actually given them in July, 1983, and the amounts they would have received had the benefits been calculated in accordance with the rates set forth in the 1980 contract between the company and the Union. In reaching his decision, defendant rejected plaintiff's arguments that the Act was pre-empted by ERISA and the NLRA, and found that he had jurisdiction over the claims. In defendant's view, ERISA did not pre-empt state intervention because the vacation provisions of the Union contract under which claimants worked did not constitute an employee benefit plan within ERISA. "Indeed," defendant stated, "it does not appear that the company believed its vacation obligations were governed by ERISA, at least until it began preparing its defense to these claims ... workers never have received ERISA-required reports." (Memorandum in Support of Demand for Payment, p. 8). Defendant also concluded that the NLRA pre-emption argument was without merit, because the case did not turn on an interpretation of federal labor law, but rather, on the provisions of the 1980 contract. Enforcement therefore would not "usurp the NLRB's authority ... interfere with the collective bargaining process or dictate the outcome of ongoing negotiations." *Id.* at p. 7. In summary, defendant found that the company

> [h]as wilfully refused to pay (vacation pay) as provided in the Wage Payment and Collection Act, and has falsely denied the validity of the instant claims, with intent to secure for itself an underpayment of its indebtedness to the claimants. A demand for payment will issue and the Department will take appropriate legal action to enforce said demand, absent voluntary compliance by the employer.

The company did not comply with defendant's Order. Instead, it commenced this action seeking declaratory and injunctive relief to the effect that Illinois law, as it applied to the vacation pay claims, is pre-empted by ERISA and the NLRA. After the action was commenced, Betty Johnson, who was a claimant before defendant McNeil, intervened and filed counterclaims against plaintiff, on behalf of herself and all others similarly situated.

## II

Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans. *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982). ERISA established certain minimum standards for the vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government, and making disclosures to participants, *id.,* so that "the private pension promise (would) become real, rather than illusory." H.R.Rep. No. 93–533, 93d Cong.2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4648.

Title I of ERISA applies to any employee benefit plan if it is established or maintained—

> 1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
> 2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
> 3) by both.

29 U.S.C. § 1003(a).

An employee benefit plan can be either an "employee welfare benefit plan" or an "employee pension benefit plan" or a plan which is both. 29 U.S.C. § 1002(3). An employee welfare benefit plan is described in the statute as

> [a]ny plan, fund or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is

maintained for the purpose of providing for its participants or their beneficiaries ... A) ... benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits ...

29 U.S.C. § 1002(1).

ERISA contemplates that such plans shall be established pursuant to a written instrument providing for fiduciaries, and that the assets of the plan shall be held in trust by trustees to manage and control the assets of the plan. 29 U.S.C. §§ 1102, 1103.

Not all employee plans can meet these statutorily specific parameters. *See* 29 U.S.C. § 1143(a)(1) ("there are types of plans not subject to this Act"). Additionally, the Secretary of Labor has enacted 29 C.F.R. 2510.3–1 which exempts certain practices from ERISA coverage. These include:

Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) performs no duties; for example—

i) Payment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for business reasons.

29 C.F.R. 2510.3–1(b)(3)(i).

ERISA provides a broad pre-emption section. 29 U.S.C. § 1144(a) states that

[t]he provisions of this title ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 4(a) ...

■ ERISA, however, does not pre-empt statutes regulating practices which either do not qualify as, or are excepted from the definition of, ERISA benefit plans, and therefore are not covered by the statute.

*Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2903, 77 L.Ed.2d 490 (1983).

■ Plaintiff of course argues that its vacation pay plan was established pursuant to ERISA, and that Illinois law is pre-empted insofar as it relates to the plan. This court disagrees. The facts of this case simply do not substantiate plaintiff's claims. Here the court is pointed to no established fund, no beneficiaries and no fiduciaries. Plaintiff has submitted no evidence of a summary plan description, no annual reports, no trust agreement, which would lead the court to conclude that this was an ERISA fund established or maintained by the employer for the benefit of its employees. As noted by defendant McNeil, the ERISA pre-emption argument only seems to have come into play when plaintiff began preparing its defense to court actions instituted against it.

According to plaintiff, however, the "plain meaning" of the statute mandates a finding that its plan is within ERISA. While it is true that ERISA encompasses "vacation benefits" under the rubric of employee welfare plan, 29 U.S.C. § 1002(1), it is equally true that such benefits must meet the other ERISA requirements that the assets of the plan be funded in trust. The court does not dispute that in a proper case vacation benefits can fall within ERISA coverage, and be subject to federal pre-emption. *See e.g., Baker v. Caravan Moving Corporation,* 561 F.Supp. 337 (N.D.Ill.1983). But this is not that case.

Plaintiff persists, however, and cites *California Hospital Association v. Henning,* 569 F.Supp. 1544 (C.D.Cal.1983) as support for its view that all vacation plans and programs are covered by ERISA, "irrespective of whether such arrangement is funded, trusteed, or embodied in a writing." *Id.* at 1546. *Henning* is a lone voice however, and it is in direct contravention of the statute. 29 U.S.C. §§ 1102, 1103. This court is of the opinion that *Henning* was wrongly decided, and that the better view is expressed in the interpretation of ERISA found in *Taggart Corporation v. Life and Health Benefits Administration, Inc.,* 617

F.2d 1208 (5th Cir.1980), *cert. denied* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), where the court held that ERISA does not apply to a program with no assets, no fund, and no trust to be protected by ERISA.

■ Furthermore, *Henning* directly contradicts the Secretary's regulation exempting vacation benefits paid out of an employer's general assets from ERISA coverage. The administrative interpretation of ERISA by those entrusted with its enforcement is entitled to great weight. *Abella v. W.A. Foote Memorial Hospital, Inc.,* 740 F.2d 4 (6th Cir.1984).

■ As this court stated to counsel at oral argument, the matter appears clear that the Act is not pre-empted by ERISA. ERISA has nothing to do with how collective bargaining agreements are administered or enforced. At issue here is whether a state agency can order an employer to pay wages earned under a collective bargaining agreement. That is a far cry from the purpose for which Congress enacted ERISA.

Even assuming *arguendo,* that plaintiff's vacation plan did fall within ERISA's provisions, the court doubts that plaintiff has standing to bring this action under ERISA. *See* 29 U.S.C. § 1132(e)(1) (a civil action may only be brought by "the Secretary, or by a participant, beneficiary or fiduciary"). *Also see Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Nothing in the evidence or oral presentations made to this court indicates that plaintiff employer is either a participant, beneficiary, or fiduciary, and thus, entitled to bring an ERISA action.

■ A final factor in rejecting the ERISA pre-emption argument is that the Illinois law in question provides for criminal penalties. It has been held that any Act which sanctions criminal prosecution for failure to make certain wage payments is not pre-empted by ERISA. *See* 29 U.S.C. § 1144(b)(4); *Sasso v. Vachris,* 116 Misc.2d 797, 456 N.Y.S.2d 629 (Sup.1982). For the foregoing reasons, therefore, the court concludes that plaintiff's claim of ERISA pre-emption is without merit.

### III

■ The court also rejects plaintiff's alternative argument of NLRA pre-emption. Not every state law dealing with terms and conditions of employment comes within the sweep of the federal labor laws. *San Diego Building Trades v. Garmon,* 359 U.S. 236, 243–44, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959). To determine if state regulation is pre-empted by federal labor laws, a court must make a balanced inquiry into such factors as the nature of the federal and state interests and the potential for interference with federal regulation. State interests that are "a merely peripheral concern" of federal labor law override the federal interest. *Id.* Alternatively, state regulation may escape pre-emption by being directed at state "interests so deeply rooted in local feeling and responsibility" that, in the absence of compelling congressional direction, (a court) could not infer that Congress had deprived the states of the power to act. *Id.* at 243, 244, 79 S.Ct. at 778, 779. *See also, Gould Inc. v. Wisconsin Department of Industry, Labor and Human Relations, et al.,* 750 F.2d 608, at 610–611 (7th Cir.1984).

■ The Illinois Act is one that provides basic protections for the working citizens of Illinois. In balancing the interests at play here, it is plain to this court that the Department seeks to enforce rights which are "a merely peripheral concern" of federal law, and which implicate "interests so deeply rooted in local feeling and responsibility" that state action in no way interferes with the NLRB's authority.

### IV

Summary judgment is appropriate in actions where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Cedillo v. International Asso-*

*ciation of Bridge & Structural Iron Workers,* 603 F.2d 7, 10 (7th Cir.1979). The parties agree that there is no issue of material fact in dispute, and the court has carefully reviewed relevant law relating to pre-emption. The law is clear that the Illinois Wage Payment & Collection Act is not pre-empted by ERISA, or the NLRA, and the court concludes that defendant and intervenors are entitled to judgment as a matter of law. Accordingly, defendant's and intervenors' motions for summary judgment are granted, and judgment is entered in their favor; plaintiff's motion for summary judgment is denied.

So ordered.