Theodore J. DULCHINOS, Plaintiff,

v.

BAY STATE GAS COMPANY, et al., Defendants.

No. 06–30081–MAP.

United States District Court, D. Massachusetts.

Nov. 16, 2006.

Stephanie A. Fitzgerald, Frank P. Fitzgerald, P.C., Springfield, MA, for Plaintiff.

Timothy F. Murphy, Skoler, Abbott, & Presser, P.C., Springfield, MA, for Defendants.

### MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' PARTIAL MOTION TO DISMISS

#### (Dkt. Nos. 5 & 9)

PONSOR, District Judge.

On October 25, 2006, Chief Magistrate Judge Kenneth P. Neiman issued his Report and Recommendation, to the effect that Defendants' Partial Motion to Dismiss (Dkt. No. 5) be allowed as to Counts II and IV, but denied as to Count I. No objection has been filed by either party to this Report and Recommendation.

Upon *de novo* review, the court hereby ADOPTS the Report and Recommendation, with the result that Counts II and IV are hereby ordered DISMISSED. This case will proceed as an ERISA and age discrimination case, based upon the remaining Counts I and III.

This matter is hereby referred to Chief Magistrate Judge Neiman for a pretrial scheduling conference on the remaining counts.

It is So Ordered.

### REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' PARTIAL MOTION TO DISMISS (Document No. 5)

NEIMAN, United States Magistrate Judge.

Thomas J. Dulchinos ("Plaintiff") brings this action against his former employer, Bay State Gas Company ("Bay State Gas"), and its parent company, NiSource Corporate Services Company ("NiSource") (together "Defendants"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff's action arises from his denial of benefits from a NiSource severance policy. Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants have moved to dismiss Plaintiff's non-ERISA counts, namely, his breach of contract and tortious misrepresentation causes of action (Counts II and IV), as well as his claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I). According to Defendants, the state-law claims are preempted by ERISA and the ADEA claim is untimely.

Defendants' partial motion to dismiss has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons provided below, the court concludes that Counts II and IV are indeed preempted by ERISA, but that Count I, the ADEA claim, ought not be dismissed as untimely. Accordingly, the court will recommend that Defendants' motion to dismiss be allowed in part only.

### I. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Dismissal is appropriate when a plaintiff cannot prove any set of facts entitling him to relief. *See* Fed.R.Civ.P. 12(b)(6); *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997).

### II. BACKGROUND

Most of the following allegations come directly from Plaintiff's complaint and are

stated in a light most favorable to him. To give a complete picture, however, the court has also looked to documents attached to Plaintiff's complaint as well as several undisputedly authentic public records. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001) (noting that such documents may be properly considered on a Rule 12(b)(6) motion).

Plaintiff began working at Bay State Gas in 1972 when he was about twenty-two years old. (See Complaint ¶¶ 5, 15.) In June of 2001, Plaintiff—then Manager of Distribution—was diagnosed with cancer. (*Id.* ¶¶ 6, 7.) He applied and was approved for a twenty-six week medical leave of absence, which qualified him to receive short-term disability ("STD") benefits. (*Id.* ¶ 7.)

At around the same time, Bay State Gas, during the course of a company reorganization, eliminated nearly one hundred jobs, including Plaintiff's. (*Id.* ¶¶ 6, 8 and Ex. B.) Defendants sent Plaintiff a "letter agreement" dated November 14, 2001, which outlined his anticipated "termination." (*Id.*, Ex. A.) It indicated that Plaintiff would continue as an employee through December 31, 2001, at which point he would be eligible to receive a severance payment. (*Id.*)

Apparently confused about Plaintiff's status as a medically-disabled employee, his attorney sent Defendants a letter dated November 26, 2001. Although a copy of that letter has not been provided to the court, a response letter dated November 29, 2001, from Defendants' Senior Director of Human Resources, John Hutton ("Hutton"), which is part of the record, attempted to "clarify several issues." (*Id.*, Ex. B.) Hutton first stated that Plaintiff's STD

benefits would "continue until early December 2001." (*Id.*) Hutton then stated that Plaintiff's status—should he continue to be disabled for work and otherwise qualified for long-term disability ("LTD") benefits—would "be converted to that of an inactive employee receiving LTD benefits." (*Id.*) Finally, Hutton explained, Plaintiff was "not eligible for severance pay benefits at this point in time," stating, in full, the following:

> The Severance Pay Policy provides for severance payments to employees "only if he or she is terminated by the {company} [sic] for any reason other than cause." As was explained above, [Plaintiff] is still, at this point in time, an employee of the Company even though the position he held while he was working has been eliminated. It is not the elimination of one's position that entitles an employee to severance pay. What qualifies an employee for severance pay under the Company's severance pay policy is when an employees' [sic] employment is terminated by the Company for reasons other then [sic] cause. Consequently, [Plaintiff] is not eligible for severance pay benefits at this point in time.

(*Id.*) A complete copy of the NiSource Severance Policy (hereinafter "the NSP") is attached to the complaint as Exhibit C and is addressed more fully below.[1]

According to the complaint, Plaintiff "continued to receive [STD] benefits until early December 2001" and, thereafter, "qualified to receive [LTD] benefits." (*Id.* ¶¶ 11, 12.) Plaintiff's LTD benefits continued until May 1, 2005, when he "informed [Defendants] that he was no longer considered disabled pursuant to the [LTD] carri-

---

1. The only version of the NSP supplied to the court has an "effective date" of November 1, 2001. Although that version indicates it was "revised" on January 1, 2005, no party has asserted that any such revision bears on the current issues.

er." (*Id.* ¶ 13.) At the time, Plaintiff was fifty-five years old. (*Id.* ¶ 15.)

Defendants responded to Plaintiff "that [his] position was eliminated in 2001, that there was no available position for him currently, and that Defendants were deny- ing him severance benefits." (*Id.* ¶ 14.) Accordingly, on June 30, 2005, Plaintiff requested review pursuant to procedures outlined in the NSP. (*Id.* ¶ 16.) In a letter dated October 14, 2005, however, Defen- dants upheld the denial of severance bene- fits. (*Id.* ¶ 17.)

This October 14th letter, authored by Defendants' in-house counsel, Jenny Hig- gins ("Higgins"), stated that Plaintiff had been informed, via Hutton's letter nearly four years earlier, that he "was no longer eligible for the severance program because he was then on long-term disability." (*Id.*, Ex. D.) Higgins then noted that "eligibility for the severance program sunsetted on December 31, 2001, as indicated in the [November 14, 2001] severance agree- ment." (*Id.*) Higgins also stated that Plaintiff was not entitled to severance ben- efits under the terms of the NSP. (*Id.*) According to Higgins, "[o]nce a participant begins receiving a[LTD] benefit, he is no longer eligible for a severance payment under the [NSP] unless he *returns to ac- tive employment and is subsequently ter- minated in a manner provided for under the [NSP]*." (*Id.*) Plaintiff, Higgins con- cluded, did not meet those eligibility re- quirements. (See *id.*)

On October 31, 2005, Plaintiff filed charges of discrimination with both the Equal Employment Opportunity Commis- sion ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD"). (See Document No. 6 ("Defs.' Brief"), Exhibits.) Plaintiff's MCAD charge indicates that he was complaining of both age and handicap discrimination. (See *id.*) It is not clear from the record how those charges were resolved.[2]

Regardless, on June 14, 2006, Plaintiff filed the instant four-count action. In Count I, Plaintiff contends that he was terminated from his position in May of 2005 and thereafter denied severance ben- efits based on his age in violation of the ADEA. Plaintiff also claims breach of con- tract (Count II) and tortious misrepresen- tation (Count IV). As indicated, Defen- dants' motion to dismiss targets these three causes of action, but not Plaintiff's ERISA claim (Count III).

### III. DISCUSSION

Defendants' motion to dismiss has two parts. First, they argue that the NSP is governed by ERISA and, therefore, Counts II and IV (Plaintiff's breach of contract and tortious misrepresentations claims) are preempted. Second, Defen- dants argue that Count I (the ADEA cause of action) should be dismissed as untimely. As indicated, the court has concluded that the two state-law claims are indeed preempted by ERISA, but that Plaintiff's ADEA claim ought not be dismissed as untimely. The reasons for these conclu- sions follow.

### A. ERISA Preemption

■ Defendants' ERISA preemption ar- gument with respect to the two state-law claims can be dealt with in fairly short order. ERISA's broad preemption provi- sion indicates that the statute "shall super- sede any and all State laws insofar as they may now or hereafter relate to any em- ployee benefit plan." 29 U.S.C. § 1144(a). Courts have construed this provision "as

---

**2.** The court also notes that the EEOC record contains a curious reference to discrimination based on sex.

'the most sweeping federal preemption ever enacted.'" *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 68 (4th Cir. 1988) (quoting *California Hospital Ass'n v. Henning*, 569 F.Supp. 1544, 1546 (C.D.Cal.1983)).

Plaintiff concedes that, under well-settled Supreme Court caselaw, ERISA preempts any state-law claims if, in a "broad common sense meaning," they "relate to" a plan covered by ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Moreover, Plaintiff does not dispute that his breach of contract and tortious misrepresentation claims directly "relate to" the NSP. (See Document No. 8 ("Pl.'s Brief") at 6–7.) Accordingly, Plaintiff acknowledges that the sole question for determination by this court is whether the NSP is, in fact, an ERISA plan. In the court's estimation, it most certainly is.

In the only case Plaintiff cites on the issue of ERISA preemption, District Judge Morris E. Lasker noted that "the general rule [is] that severance packages are covered by ERISA." *Merkl v. Blue Cross & Blue Shield of Mass., Inc.*, 20 F.Supp.2d 188, 192 (D.Mass.1998). To be sure, Judge Lasker observed that the Supreme Court has crafted an "exception" to this rule. *Id.* "In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)," Judge Lasker explained, "the Court held that an arrangement or mandate to make a lump sum severance payment upon the occurrence of a single event is not a 'plan' under ERISA." *Id.* at 190. Plaintiff, however, has not provided any persuasive argument that the *Fort Halifax* exception applies here.

As the First Circuit noted—in a case decided several years after Judge Lasker's analysis—the severance plan in *Fort Halifax* "did not constitute an ERISA plan because it did not implicate the employer's administrative integrity." *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 267 (1st Cir.2001) (citations and internal quotation marks omitted). The determination of whether a particular severance program constitutes an ERISA plan, the First Circuit explained, "turns most often on the degree of an employer's discretion in administering the plan." *Id.* For example, in *Simas v. Quaker Fabric Corp.*, 6 F.3d 849 (1 st Cir.1993), another post-*Fort Halifax* case, the First Circuit "found that a severance bonus for which employees were eligible during a twenty-four month election period, if not fired for cause, implicated the protections of ERISA because 'the time period was prolonged, individualized decisions were required, and at least one of the criteria was far from mechanical.'" *O'Connor*, 251 F.3d at 269 (quoting *Simas*, 6 F.3d at 854). In contrast, the First Circuit held in *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451 (1st Cir.1995), that a severance bonus program which "required no complicated administrative apparatus either to calculate or distribute the promised benefit" was not an ERISA plan. *Id.* at 455.

In this court's estimation, the NSP here is akin to the discretionary severance programs which were found to be ERISA plans in the *Simas* line of cases. *See, e.g., O'Connor*, 251 F.3d at 269 (citing the following as *Simas* progeny: *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 935 (8th Cir.1999) (finding an ERISA plan where eligibility for severance required employer to "make an *ad hoc* judgment about the reason for the employee's termination and evaluate the quality of that person's service"); *Collins v. Ralston Pu-*

*rina Co.*, 147 F.3d 592, 597 (7th Cir.1998) (relying in part on *Simas* to hold that retention contract that called for payment of severance in the event of a "substantial reduction of duties or responsibilities" was an ERISA plan because employer was "required to exercise discretion on an ongoing basis and to make nonclerical 'judgment calls' "); and *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2nd Cir.1996) (concluding that a severance conditioned on involuntarily terminated employee's good faith effort to obtain commensurate employment elsewhere implicated ERISA because it necessitated "managerial discretion")). The court reaches this conclusion for at least four reasons.

First, the NSP specifically endowed its administrators with discretion "to interpret the Policy, prescribe, amend and rescind rules and regulations relating to it, determine the terms and provisions of severance benefits and make all other determinations it deems necessary or advisable for the administration of the Policy." (Complaint, Ex. C ¶ 2.) Such judgments clearly "implicate [Defendants'] administrative integrity." *O'Connor*, 251 F.3d at 267. Second, like the *Simas* policy itself, the NSP also uses cause-centered eligibility language; that is, participants are entitled to seek severance benefits only if they are terminated "for any reason other than Cause" and the determination of "cause" is entirely within NiSource's "sole discretion." (See *id.* ¶¶ 4, 4(b).) Third, the NSP provides a detailed claims procedure with internal appeal rights for benefits that are denied. (See *id.* ¶ 15.) Finally, and perhaps most importantly, the NSP concludes with a comprehensive "ERISA" para-

graph, *i.e.*, it actually describes the policy as ERISA-based, outlines NiSource's "fiduciary" duties under ERISA, and notifies participants of their right of judicial review pursuant to ERISA. (*Id.* ¶ 16.) Given that Plaintiff, in step with the NSP's language, pursued his ERISA rights and specifically filed this action under that statute, it is somewhat incongruous that he would now seek to describe the NSP as a *non*-ERISA plan.

In any event, for all the reasons stated, this court finds the NSP to be an ERISA plan. Since Plaintiff, in turn, does not dispute that his breach of contract and tortious misrepresentation causes of action "relate to" the NSP, those causes of action, in the court's opinion, are necessarily preempted. *See also Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 51–53 (1st Cir. 2000) (holding that state-law contract claim is preempted by ERISA when the claim relates to a benefit plan and is merely an alternative mechanism for obtaining ERISA plan benefits); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793 (1st Cir.1995) (ERISA preempts a misrepresentation claim because it has "a connection with" or makes "reference to" an ERISA plan). Accordingly, the court will recommend that Defendants' motion to dismiss with respect to Counts II and IV be allowed.

### B. *Timeliness of Plaintiff's ADEA Claim*

Defendants have also moved to dismiss Plaintiff's ADEA claim (Count I), alleging that it was untimely filed at the MCAD and the EEOC.[3] In this regard, the parties agree that Plaintiff had to file his age discrimination charges administratively

---

**3.** Defendants argue as well that Plaintiff's cause of action for tortious misrepresentation is barred by the three year statute of limitations for such claims. *See* Mass. Gen. L. ch. 260, § 2A. As indicated above, however, the

court believes that that count is preempted by ERISA. Accordingly, this portion of the report and recommendation addresses only the ADEA cause of action.

within 300 days after the alleged unlawful practice occurred. *See* 29 U.S.C. § 626(d)(2). At issue here is the date that Plaintiff's 300–day limitations period commenced.

■ Defendants assert that the limitations period commenced on November 29, 2001, the date Hutton made an "unequivocal" communication that Defendants were denying him severance benefits. (Defs.' Brief at 3.) Plaintiff, for his part, argues that Defendants' "initial denial" of severance benefits on November 29, 2001 was conditional, *i.e.*, it implied that he could seek severance benefits *after* his LTD benefits expired, which he did, and that the "last" discriminatory act occurred on October 14, 2005, when Higgins issued her letter denying Plaintiff's request for review. (See Pl.'s Brief at 3–5.) As Plaintiff puts it: "[T]he October 14, 2005 denial of review of ... Plaintiff's benefits status, and denial of continued employment was the last in a continuous chain of discriminatory violations[;] therefore, ... Plaintiff's [c]harge[s] filed on October 31, 2005 [were] timely." (*Id.* at 5.) In the court's estimation, Plaintiff has the better argument.

■ As Defendants note, the general rule is that "[e]ach incident of discrimination ... constitutes a separate actionable unlawful employment practice." *Amtrak v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation marks omitted). Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.Accord Campbell v. BankBoston, N.A.*, 327 F.3d 1, 11 (1st Cir.2003) (citation omitted). The Supreme Court, however, has held that the statute of limitations "will not exclude acts that are part of the same unlawful employment practice if at least one act falls within the time period."

*Dressler v. Daniel*, 315 F.3d 75, 79 (1st Cir.2003) (citing *Morgan, supra* ).

Here, Defendants' argument to the contrary, their supposed "denial" of severance benefits on November 29, 2001, was not a "discrete discriminatory act." If anything, it was part of an extended "unlawful employment practice," at least as alleged by Plaintiff, which culminated on October 14, 2005. Thus, Hutton's November 29, 2001 letter was hardly "unequivocal," as Defendants try to argue. As described, Hutton first noted that Plaintiff's STD benefits would "continue until early December 2001." Hutton then stated that, should Plaintiff continue to be disabled for work and otherwise qualify for LTD benefits, his status would "be converted to that of an inactive employee receiving LTD benefits." Finally, Hutton explained in his letter that Plaintiff was "still ... an employee" and, therefore, "not eligible for severance pay benefits *at this point in time.*" The clear import of Hutton's letter is that Plaintiff could be eligible for severance benefits *at a later point in time, e.g.,* when his STD *and* LTD benefits expired.

Try as it might, Higgins' October 14, 2005 letter cannot undo the conditional nature of Hutton's November 29, 2001 letter. To be sure, Higgins asserts in her letter that Hutton categorically told Plaintiff that he "was no longer eligible for the severance program because he was then on long-term disability." However, that characterization of Hutton's letter, in the court's view, is not only wrong—Plaintiff was actually receiving *short*-term disability benefits on November 29, 2001—but belied by Hutton's own words. As described, Hutton simply stated that Plaintiff, as "an employee," was ineligible to receive a severance package "at this point in time." Such language is not "unequivocal" and ought not be used as a basis for dismissing

Plaintiff ADEA cause of action on timeliness grounds.

In some ways, Plaintiff's position is not unlike that of the plaintiff in *Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141 (1st Cir.2004), a case arising from this court. There, the First Circuit held that a claim for negligent misrepresentation concerning the procurement of a life insurance annuity contract could not have accrued at the time the policy was procured since the factual basis for the claim was inherently unknowable until five years later when the plaintiff's annuity payments ceased. *See id.* at 144–45, 147. Similarly here, given the conditional language Hutton used in his November 29, 2001 letter, Plaintiff could not have known, at least as the facts now stand, that he was being discriminated against because of his age.

In summary, viewing the facts in a light most favorable to him, Plaintiff had a legitimate expectation in November of 2001 that he would be entitled to severance benefits once his LTD benefits expired several years later. When that occurred on May 1, 2005—and Plaintiff was actually told that he was *never* going to receive severance benefits—he acted swiftly. He sensed age discrimination and immediately filed charges of discrimination with the appropriate state and federal agencies. Given these facts, the court will recommend that Defendants' motion with respect to Count I be denied.

### IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motion to dismiss be ALLOWED with respect to Counts II and IV, but DENIED with respect to Count I.[4]

Oct. 25, 2006.

---

4. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.