LAWRENCE BARRY & another[1] *vs.* DYMO GRAPHIC
SYSTEMS, INC., & another.[2]

Middlesex.    March 4, 1985. — May 20, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Federal preemption. *Employee Retirement Income Se-
curity Act. Practice, Civil*, Certification of class. *Jurisdiction*, Federal
preemption.

In an action against an employer by former employees seeking severance
    and vacation pay under an employee benefit plan and requesting class
    certification, the judge did not err in ordering the case, upon a request
    by the employer, to proceed as a "test case" and conditioning his denial
    of the plaintiffs' motion to certify on the employer's filing a stipulation
    regarding its liability. [834-835]
A claim by employees that the application of State law to a determination
    of their employer's obligation under its employee benefit plan was
    preempted by the Employee Retirement Income Security Act of 1974,
    29 U.S.C. §§ 1001-1461 (1982), raised a question of subject matter
    jurisdiction, which could properly be considered for the first time on
    appeal. [835-836]
Despite an employer's failure to meet the reporting and disclosure require-
    ments of the Employee Retirement Income Security Act of 1974, 29
    U.S.C. §§ 1001-1461 (1982), the employer's severance and vacation
    pay plans were employee benefit plans within the purview of the Act,
    and, consequently, a judge's application of State law to a determination
    of the right of employees to severance and vacation pay was preempted.
    [836-839]
Where the record in an action by former employees seeking severance and
    vacation pay under an employee benefit plan was not sufficiently de-
    veloped to allow an accurate determination whether the employer's action
    in denying the requested benefits conformed to the applicable standard
    under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

--- 

[1] Alain Hanover.

[2] Esselte Pendaflex Corporation. Dymo Graphic Systems, Inc. (DGS), was
a wholly owned subsidiary of Dymo Industries, Inc. (Dymo). After commence-
ment of this action, Dymo assumed all assets and liabilities of DGS through
a series of corporate acquisitions and mergers. Dymo changed its name to
Esselte Pendaflex Corporation (Esselte). The plaintiff filed a substitute com-
plaint, naming Esselte as a defendant, to address corporate changes.

§§ 1001-1461 (1982), this court remanded the matter to the Superior Court for further hearing. [839-840]

Review of the factors relevant to a determination under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (1982), whether an employer had improperly denied benefits allegedly due employees under an employee benefit plan. [840-841]

CIVIL ACTION commenced in the Superior Court Department on July 11, 1979.

The case was heard by *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Marshall Simonds (Holly C. Laurent* with him) for the defendants.

*Warren H. Pyle (David B. Rome* with him) for the plaintiffs.

*Joseph D. Alviani & Wayne S. Henderson* for New England Legal Foundation, amicus curiae, submitted a brief.

NOLAN, J. The defendants, Dymo Graphic Systems, Inc. (DGS), and Esselte Pendaflex Corporation (Esselte), appeal from a Superior Court judgment which awarded the plaintiff Lawrence Barry $3,577.50 damages for severance pay and the plaintiff Alain Hanover $1,123.08 damages for vacation pay, plus interest and costs to each plaintiff. The defendants also appeal from the judge's order that this case proceed on a "test case" basis with a stipulation DGS filed pursuant to the order.[3]

The defendants' underlying obligation allegedly arises out of a plan for employee severance and vacation benefits. For the first time on appeal, the defendants raise the issue whether the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (1982) (ERISA), preempts the application of State law to a determination of the defendants' obligation under this employee benefits plan. For the reasons stated below, we conclude that the judge properly ordered this case to proceed as a test case and that ERISA preempts the application of State

---

[3] DGS filed the stipulation prior to the plaintiffs' substitute complaint which named Esselte as a defendant.

law to this case. We remand this matter to the Superior Court to determine whether the defendants' interpretation of the plan was arbitrary and capricious.

We summarize the relevant factors as found below. In April, 1975, and October, 1976, DGS acquired Photon, Inc., and Xylogic Systems, Inc., respectively. Prior to the acquisitions, Barry was an employee of Photon and Hanover was an employee of Xylogic. They continued in substantially similar jobs with DGS after the acquisitions. During each acquisition, the president of DGS met with the employees of the prior concern and informed them that they would receive equal or better benefits and salary through employment with DGS. As part of the benefits, DGS credited former Xylogic and Photon employees with the years of service with their prior employers. In addition, DGS issued booklets to its employees in July, 1976, and July, 1977, which stated the benefits of DGS, including severance and vacation pay.

In March, 1977, Hanover, a supervisory employee, received a looseleaf manual entitled "Personnel Policies" (manual). This manual detailed the personnel benefits, policies, and practices of DGS. It indicated that the severance pay policy provided one week's pay for each year of service, "[i]f an employee's position is eliminated through reorganization or layoff, and he/she is forced to separate from the company through no fault of his/her own . . . ." The vacation policy contained a vacation eligibility schedule and stated that "[v]acation credit may not be accrued or carried over from year to year." DGS, however, acquiesced in the carryover of and occasionally authorized employees to carryover vacation credits in order to accommodate production schedules.

Although DGS distributed the manual only to supervisory employees, it was available to all employees on request. Hanover read the manual, availed himself of the described benefits, and used it to explain personnel policies to employees under his supervision. Barry read the manual in the DGS personnel office in 1977, and again saw it in 1978.

On March 21, 1979, Barry, Hanover, and other DGS employees received a memorandum from the DGS president which

informed them of the imminent takeover of DGS by Itek Corporation (Itek). The memorandum indicated that Itek would offer most DGS employees continued employment. DGS would provide severance benefits in excess of those delineated in the manual to those employees not offered continued employment with Itek. Employees offered continued employment with Itek would not be eligible for any severance benefits. The memorandum further provided that DGS would pay vacation time owed to those DGS employees who became employed by Itek. Barry and Hanover accepted employment with Itek upon the takeover on March 23, 1979.

On July 11, 1979, the plaintiffs filed a complaint in the Superior Court and requested class certification. See Mass. R. Civ. P. 23, 365 Mass. 767 (1974). Barry alleged that DGS owed him and all other similarly situated former DGS employees for severance pay. Hanover alleged that DGS failed to compensate him and other similarly situated former DGS employees who did forgo, at DGS's request, taking vacation accrued prior to the date of the takeover by Itek. These obligations were based on an alleged contract under which DGS undertook to provide various benefits to its employees. DGS filed a memorandum in opposition to the motion for class certification in which it questioned the propriety of class certification. DGS requested the use of the test case approach, asserting that this approach was superior to class adjudication of the dispute. In ruling on class certification, the judge ordered that "the motion to certify is to be denied if the defendant files such a stipulation regarding liability and the statute of limitations . . . . If it is not so filed, the Motion is to be allowed." DGS filed a stipulation, waiving the statute of limitations and agreeing to be bound by a determination of liability.[4]

---

[4] DGS's stipulation regarding test case procedures reads as follows: "Defendant herein, in response to an Order of the Court dated April 16, 1980, offers the following stipulations with regard to the 'test case' procedure:

"1. *Statute of Limitations.* If the test case procedure is adopted, the defendant agrees to waive any defense based on the Statute of Limitations

1. *The propriety of the test case procedure.* The defendants assert that the judge improperly conditioned the denial of class certification on DGS's filing of the stipulation regarding liability.[5] The defendants argue that class certification was improper in this instance and, therefore, the judge could not properly threaten class certification to force the defendants to relinquish their right not to be bound in any future cases. The defendants' argument rests on a fallacious premise that the judge forced them to choose between an improper class certification or the test case procedure. As the premise fails, so does the defendants' argument.

The defendants' position, faced with a request for class certification, was no different from that of any similarly situated litigant. They could acquiesce in or oppose the certification. In opposing class certification, the defendants chose, as a matter of tactics, to request the test case procedure. That was not their only choice. The defendants could have opposed certification solely on the basis that the dispute was not an appropriate class action.

---

as to any subsequent plaintiffs whose claim is based on the same factual circumstances as the present plaintiffs and whose claim was not already barred prior to the commencement of this action.

"2. *Existence of a Contract.* If the test case procedure is adopted, the defendant agrees to be bound by any decision of this Court regarding the existence of any express or implied contract to the extent that any subsequent plaintiff is able to prove the same factual elements of a contract which the present plaintiffs are required to prove. More particularly, if the present plaintiffs are required to prove individual detrimental reliance in order to establish the existence of a contract, the defendant does *not* stipulate that any other plaintiff has detrimentally relied on the defendant's offer to pay particular benefits absent proof of detrimental reliance by each subsequent plaintiff.

"3. *Effect of a Contract.* If a test case procedure is adopted, the defendant agrees to be bound by any decision of this Court regarding whether any contract deemed to exist between the test case parties requires the payment of benefits to the test case parties.

"4. *Appellate Rights.* The defendant does not waive its right to appeal any decision of this Court regarding liability or damages."

[5] On appeal, the defendants do not seek relief from that portion of the stipulation which concerns the statute of limitations.

We have approved the test case procedure as it is outlined in *Katz* v. *Carte Blanche Corp.*, 496 F.2d 747, 758-762 (3d Cir.), cert. denied, 419 U.S. 885 (1974). *Carpenter* v. *Suffolk Franklin Sav. Bank*, 370 Mass. 314, 322 (1976). A test case procedure only may be used if requested by the defendant. *Katz* v. *Carte Blanche Corp., supra* at 762. A stipulation such as that filed by DGS is an appropriate and intrinsic element of the test case procedure. *Id.* at 760-761 & n.7. DGS, having initiated the test case procedure by request, cannot claim that it was error for the judge to follow the procedure delineated in *Katz*. DGS made a tactical choice and must live by that choice. The order for a test case procedure which conditioned the denial of class certification on DGS's filing a stipulation regarding liability was not erroneous.

2. *ERISA preemption.* As a threshold issue, we address the plaintiffs' argument that the defendants may not raise the issue of ERISA preemption for the first time on appeal. The extent to which ERISA preempts the application of State law to employee benefit plans determines whether this issue is properly raised. In *Tosti* v. *Ayik*, 386 Mass. 721, 725 (1982), quoting *Litton Business Syss.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981), we stated that "[s]ubject matter jurisdiction may be raised for the first time on appeal as it 'cannot be conferred by consent, conduct or waiver.'" The jurisdictional issue in *Tosti* concerned the preemption of State libel law in the context of a labor dispute. "Federal labor law preempts State libel law to the extent that defamatory statements made in the context of a labor dispute are actionable only if made with knowledge of their falsity or with reckless disregard of the truth." *Tosti, supra* at 723, citing *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers* v. *Austin*, 418 U.S. 264, 273 (1974), and *Linn* v. *Plant Guard Workers Local 114*, 383 U.S. 53, 61 (1966). The application of State law to employee benefit plans is more extensively preempted under ERISA. The Supreme Court recently stated that in ERISA "Congress applied the principle of pre-emption 'in its broadest sense to foreclose any non-Federal regulation of employee benefit plans,' creating only very limited exceptions to pre-em-

tion." *Shaw* v. *Delta Air Lines,* 463 U.S. 85, 104 (1983), quoting 120 Cong. Rec. 29197 (remarks of Rep. Dent). The exceptions to preemption appear in 29 U.S.C. §§ 1003 and 1144. Neither provision applies to this case.[6] ERISA preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). This is more extensive than the partial preemption of State libel law we faced in *Tosti.* We therefore conclude that the question whether ERISA preempts the application of State law to this dispute presents an issue of subject matter jurisdiction which may be raised for the first time on appeal. See *Tosti, supra* at 725.

That the defendants may raise the issue of preemption does not dispose of the issue. We must determine whether the particular employee benefits are granted pursuant to a plan within the purview of ERISA thereby precluding the application of State law.

a. *Severance pay.* There appears to be no doubt that the severance pay plan at issue falls within the scope of ERISA. The plaintiffs concede that the severance pay plan is an ERISA employee benefit plan. Various Federal courts have examined severance pay plans similar to that of DGS and determined that ERISA is applicable to such plans. See, e.g., *Dhayer* v. *Weirton Steel Div. of Nat'l Steel Corp.,* 571 F. Supp. 316, 329 (N.D. W. VA.), aff'd sub nom. *Sutton* v. *Weirton Steel Div. of Nat'l Steel Corp.,* 724 F.2d 406 (4th Cir. 1983), cert. denied, 467 U.S. 1205 (1984); *Petrella* v. *NL Indus., Inc.,* 529 F. Supp. 1357, 1362 (D. N.J. 1982) *Calhoun* v. *Falstaff Brewing Corp.,* 478 F. Supp. 357, 359 (E.D. Mo. 1979). That DGS may have failed to meet ERISA's reporting and disclosure requirements, 29 U.S.C. §§ 1021-1031, and ERISA's fiduciary

---

[6] Congress excepted certain specific types of plans from ERISA coverage. 29 U.S.C. § 1003(b). The exceptions do not apply in this case. ERISA specifically precludes preemption of "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b) (2). See *Attorney Gen.* v. *Travelers Ins. Co.,* 391 Mass. 730, prob. juris. noted sub nom. *Metropolitan Life Ins. Co.* v. *Massachusetts,* 469 U.S. 929 (1984). The application of State principles of contract law clearly is not protected by 29 U.S.C. § 1144(b) (2).

standards, 29 U.S.C. §§ 1101-1114, does not preclude ERISA coverage of this severance pay plan. *Blau* v. *Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984). "[I]t would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards." *Donovan* v. *Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982). We conclude that the severance pay plan of DGS is an employee benefit plan within the purview of ERISA. The judge's application of State law to a determination of the right to severance pay therefore was preempted.

b. *Vacation pay.* The issue whether the vacation pay plan of DGS falls within the scope of ERISA presents a more difficult question. Section 1002(1) of 29 U.S.C. defines any employer-established program which provides vacation benefits as an employee welfare benefit plan. Such plans, unless specifically exempted, appear to be covered by ERISA. 29 U.S.C. §§ 1002(1), 1002(3), and 1003. A United States Department of Labor regulation, however, states that payments of compensation out of an employer's general assets while an employee is on vacation are not made pursuant to an employee welfare benefit plan. 29 C.F.R. § 2510.3-1(b) (3) (1984). In *California Hosp. Ass'n* v. *Henning*, 569 F. Supp. 1544, 1546, (C.D. Cal. 1983), that court, faced with this apparent conflict, concluded that, "[i]f that regulation does indeed intend ERISA exemption of every unfunded vacation program, it is at clear odds with language of the statute itself and an invalid arrogation of power by the Department."[7] The United States District

---

[7] The court spoke approvingly of those plaintiffs' narrow interpretation of the regulation. That interpretation would limit the regulation's application to "those situations where there is an employer's discretionary 'practice' rather than a plan or program to which the employer is committed, by contract or otherwise." *California Hosp. Ass'n* v. *Henning, supra* at 1546. This interpretation reasonably resolves the apparent conflict between the regulation and the statute. Furthermore, it is supported by the heading in that portion of the regulation which indicates that the regulation applies to "payroll practices." 29 C.F.R. § 2510.3-1(b). The court did not find it necessary to adopt the plaintiffs' view because it concluded that, if the

Court for the Northern District of Illinois adopted the opposite view and concluded that a vacation pay plan found in a collective bargaining agreement does not fall within the ERISA provisions. *National Metalcrafters, a Div. of Keystone Consol. Indus.* v. *McNeil*, 602 F. Supp. 232 (N.D. Ill. 1985). We are persuaded by the well-reasoned analysis in *California Hosp. Ass'n* v. *Henning, supra.*

In *National Metalcrafters*, the court's analysis is based on certain misconceptions of ERISA. The court surmised that an employee benefit plan which does not comply with the fiduciary responsibility requirements of ERISA, 29 U.S.C. §§ 1101-1114, is not the type of plan that is subject to ERISA. *National Metalcrafters, supra* at 236-237. The court also relied on 29 U.S.C. § 1143(a) (1) for the conclusion that certain plans are not subject to ERISA. *Id.* at 236. This provision, however, does not relate to the scope of ERISA. Rather, it provides the Secretary of the Department of Labor with the authority "to study the need for expanding coverage of this Act to those plans which are not made subject to this Act." S. Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 4838, 4855. This reliance on 29 U.S.C. § 1143(a) (1) ignores the Supreme Court's declaration that there are only "narrow, specific exceptions" to preemption of State regulation related to employee benefit plans. *Shaw* v. *Delta Air Lines*, 463 U.S. 85, 104 (1983).

The basis of the *National Metalcrafters* result was properly discredited in *Donovan* v. *Dillingham*, 688 F.2d 1367 (11th Cir. 1982). The court noted that neither the definition of an employee benefit plan, 29 U.S.C. §§ 1002(1) and 1002(3), nor the coverage section of ERISA, 29 U.S.C. § 1003, requires a formal, written plan. The court concluded that, "[o]nce it is determined that ERISA covers a plan, the Act's fiduciary and reporting provisions do require the plan to be established pursuant to a written instrument . . . but clearly these are only the responsibilities of administrators and fiduciaries of plans

regulation exempted the plans at issue in that case, it would improperly conflict with the statute. *California Hosp. Ass'n, supra.*

covered by ERISA and are not prerequisites to coverage under the Act." *Donovan, supra* at 1372. Accord *Blau* v. *Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984).

The United States District Court for the Central District of California relied on the analysis in *Donovan* to reach its conclusion that vacation plans, such as that used by DGS, are employee benefit plans covered by ERISA. *California Hosp. Ass'n, supra* at 1546. This Court agrees with the narrow interpretation of 29 C.F.R. § 2510.3-1(b), approved in *California Hosp. Ass'n, supra.* See note 8, *supra.* We conclude that the vacation plan of DGS is an employee benefit plan covered by ERISA. To do otherwise would cause the incongruous result of allowing an employer to avoid the broad scope of ERISA coverage by adopting a plan which ignores the fiduciary responsibilities required under ERISA. *Donovan, supra* at 1372. Accordingly, State law may not determine whether the defendants owed the plaintiffs for vacation pay.

3. *Application of the ERISA standard.* Under ERISA, a determination whether an employer improperly denied benefits allegedly due an employee requires the application of an "arbitrary and capricious" standard. See, e.g., *Griffis* v. *Delta Family-Care Disability & Survivorship Plan*, 723 F.2d 822, 825 (11th Cir. 1984), cert. denied, 467 U.S. 1242 (1984). See also *Malhiot* v. *Southern Cal. Retail Clerks Union*, 735 F.2d 1133, 1135 (9th Cir. 1984), cert. denied sub nom. *Jampol* v. *Southern Cal. Retail Clerks Union*, 469 U.S. 1189 (1985). An individual with discretionary authority or responsibility in the administration of the employee benefit plan is a fiduciary for ERISA purposes. 29 U.S.C. § 1002 (21)(A). An ERISA fiduciary must interpret the plan "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). See *Palino* v. *Casey*, 664 F.2d 854, 858 (1st Cir. 1981). ERISA also requires that an administrator of an employee benefit plan fulfil certain responsibilities. See, e.g., 29 U.S.C. § 1021. Under the definitions in ERISA, the individuals at DGS who were responsible for

interpreting the benefits described in the manual are both the fiduciaries and the administrators of the employee benefit plan. 29 U.S.C. §§ 1002(16), 1002(21)(A). See *Blau* v. *Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984). The propriety of DGS's denial of benefits allegedly due the plaintiffs must be determined by applying the ERISA standards to the fiduciaries' actions.

The plaintiffs pursued and the defendants opposed this action on the basis of State contract law not applicable to this ERISA plan. The defendants did not raise any ERISA issues until they filed a supplemental brief one month before oral argument to this court.[8] Neither the Superior Court judge nor the parties had an opportunity to examine this dispute or to develop a record based on the applicable ERISA standard. In reviewing the applicable standard, we conclude that the record is not sufficiently developed to allow us to determine accurately whether the defendants' action in denying the requested benefits was arbitrary and capricious. In fairness to both parties, therefore, we remand this matter to the Superior Court for further hearing and the application of the ERISA standard. See *Tosti* v. *Ayik*, 386 Mass. 721, 725 (1982).

In order to provide the judge with guidance, we briefly review the factors relevant to a determination whether the defendants improperly denied benefits allegedly due the plaintiffs. The judge should examine the language of the benefit plan as exhibited in the employee handbook and the manual. That language and the prior practice of DGS will be factors in determining to what degree a decision to award a particular benefit was mandatory or discretionary. See *Petrella* v. *NL Indus., Inc.*, 529 F. Supp. 1357, 1362 (D. N.J 1982) (although severance plan couched in discretionary terms, defendants' administration of the severance pay plan may have entitled plaintiffs to benefits). The absence of or limitations on discretion would affect the defendants' ability to deny the plaintiffs any benefits. Cf. *Pinto* v. *Zenith Radio Corp.*, 480 F. Supp. 361, 363-364 (N.D. Ill. 1979), aff'd, 618 F.2d 110 (7th Cir.

---

[8] We acknowledge the filing of an amicus brief by the New England Legal Foundation, which further clarified the ERISA issues.

1980) (decision to deny severance pay not arbitrary and capricious where plan stated severance pay was not automatic and was to be determined on a case by case basis). The judge should give deference to a reasonable interpretation of the plan. If the defendants, however, "impose[d] a standard not required by the plan's provisions, or interpret[ed] the plan in a manner inconsistent with its plain words, or by their interpretation render[ed] some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Miles* v. *New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir.), cert. denied, 464 U.S. 829 (1983). The judge's determination should be influenced by whether the defendants failed to comply with ERISA, *Blau* v. *Del Monte Corp., supra* at 1353-1356, and whether the defendants' changes in the eligibility for benefits were made and notice given to employees subject to the limits of fundamental fairness, *Palino* v. *Casey, supra* at 859. The propriety of the defendants' interpretation of the plan should be determined considering the relevant factors regarding their duty to interpret the plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The court, therefore, should inquire into the defendants' reason for changes in eligibility for the benefits.

For the foregoing reasons, we vacate the judgment of the Superior Court and remand this matter for further action consistent with this opinion.

*So ordered.*