COMMONWEALTH vs. RICHARD N. MORASH.

Suffolk.  January 4, 1988. — May 5, 1988.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Jurisdiction,* Federal preemption. *Statute,* Federal preemption. *Employee Retirement Income Security Act. Labor,* Wages, Failure to pay wages. *Employment,* Termination. *Contract,* Employment. *Words,* "Employee benefit plan."

In answer to a reported question this court held that a prosecution under G. L. c. 149, § 148, of an officer of a corporate employer that failed to pay agreed-upon vacation benefits to discharged employees was preempted by § 1144(a) of Title 29 U.S.C. (1982), the Employee Retirement Income Security Act of 1974. [288-289]

In answering a reported question arising from the prosecution under G. L. c. 149, § 148, of a bank officer for failure to make prompt payment of wages to discharged employees of the bank, this court held that, on the facts as stipulated, the bank's policy of giving its employees a lump-sum cash payment for accrued unused vacation time, upon the termination of their employment, was an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(3) (1982). [291-293]

General Laws c. 149, § 148, which provides criminal penalties for failure to make prompt payment of wages to discharged employees, as applied to a certain employer's nonpayment of vacation benefits owed to discharged employees in accordance with an employee benefit plan, was held to "relate to" that employee benefit plan within the meaning of the preemption provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1144(a) (1982). [293-295]

General Laws c. 149, § 148, as applied to an employer's nonpayment of vacation benefits owed to discharged employees pursuant to an employee benefit plan, was held to "regulate" the terms and conditions of that employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144 (c) (2) (1982), inasmuch as it provided criminal penalties in order to obtain employers' compliance with the terms and conditions of that plan. [295-296]

General Laws c. 149, § 148, which provides criminal penalties for an employer's nonpayment of wages to employees, including nonpayment of vacation benefits due under an employee benefit plan, was held not to be

a "generally applicable criminal law," exempt pursuant to 29 U.S.C. § 1144 (b) (4) (1982), from preemption by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1145 (1982). [296-297]

COMPLAINTS received and sworn to in the Boston Municipal Court Department on May 29, 1986.

A question of law was reported to the Appeals Court by *John A. Pino,* J. The Supreme Judicial Court transferred the case on its own initiative.

*Jason Berger (Marcia E. Greenberg* with him) for the defendant.

*Marc C. Laredo,* Assistant Attorney General, for the Commonwealth.

O'CONNOR, J. The defendant is charged in two complaints with violating G. L. c. 149, § 148 (1986 ed.). Section 148 requires an employer to make prompt payment of wages owing to employees who have been discharged. Wages include "any holiday or vacation payments due an employee under an oral or written agreement." Section 148 also provides that the president of a corporation, among others, shall be deemed to be the employer of the corporation's employees. The Commonwealth contends that the defendant bank president failed to compensate two discharged vice presidents for vacation time they accrued but did not use.

The defendant moved for dismissal of the complaints, arguing that, in order to prove its case, the Commonwealth would have to establish that the defendant failed to honor an "employee welfare benefit plan" as that term is used in the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1145 (1982) (ERISA). Prosecution for not honoring such a plan, the defendant argued, and argues on appeal, is preempted by ERISA. No action was taken on the motion to dismiss. Instead, a judge of the Boston Municipal Court reported the following question to the Appeals Court: "Does the preemption provision, section 1144 (a) of . . . [ERISA] preclude prosecution of an employer who has allegedly violated G. L.

c. 149, § 148, by not compensating a former employee for unused vacation time due such employee pursuant to an oral or written agreement?" We answer the reported question as follows: "Prosecution under G. L. c. 149, § 148, of an employer who has failed to make agreed-upon vacation payments is preempted if the payments were to be made pursuant to an 'employee benefit plan.'" Since the stipulated facts in this case establish the existence of an "employee benefit plan" pursuant to which payments for unused vacation should have been, but were not, made to discharged employees, prosecution of the defendant is preempted by ERISA.

For the purpose of obtaining an answer to the reported question, the parties have stipulated as follows: The defendant is the president of The Yankee Bank for Finance and Savings, formerly known as Home Savings Bank (bank). In May, 1984, the Yankee Companies, Inc., acquired the stock of the bank, which had been in severe financial trouble. On May 29, 1986, two former bank vice presidents, Christopher C. Winslow and William R. Tuttle, were granted the complaints referred to above. Winslow claimed that he had been discharged on May 24, 1985, and that the bank owed him $14,520 for sixty-six unused vacation days. Tuttle claimed that he had been discharged on April 19, 1985, and that he was owed $11,146.38 for forty-two unused vacation days.

The parties also have stipulated, consistently with Winslow's and Tuttle's claims when they applied for the criminal complaints, that Winslow and Tuttle had been employees of the bank, that they had been discharged, and that, although the bank offered to pay them for vacation time they had accrued after January 1, 1985, the bank had not offered to pay them for the vacation time they claimed to have accrued before that date. The parties further stipulated, for the purpose of obtaining an answer to the reported question, that the bank had made oral "and/or" written agreements stemming from handbooks, manuals, memoranda, and practices to pay employees in lieu of unused vacation time, and that, "when the Bank does pay its employees for used or unused vacation time, such payments are made out of the Bank's general assets." Lastly, the parties

agree on appeal that, pursuant to bank policy, employees who accrue unused vacation time receive a lump-sum cash payment in lieu of the unused time upon termination of their employment.

The ERISA preemption provision, 29 U.S.C. § 1144(a) (1982), provides that "[e]xcept as provided in subsection (b) of this section, the provisions of [ERISA] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a)." Section 1003(a) does not *define* "employee benefit plan." It merely describes the employee benefit plans to which ERISA applies. To the extent material here, § 1003(a) provides that ERISA "shall apply to any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce. . . ."

Section 1002(3) defines "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan . . . ." There is no contention in this case that the bank's agreement to pay discharged employees for accrued but unused vacation time constituted an employee pension benefit plan. Rather, the defendant contends that the bank's agreement constituted an employee welfare benefit plan. Section 1002(1) defines "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . vacation benefits . . . ." The statute does not define the words "fund" or "program," or further define the word "plan."

In *Barry* v. *Dymo-Graphic Syss., Inc.*, 394 Mass. 830 (1985), former employees sued the defendant to recover severance pay and vacation pay. Their action was based on booklets, manuals, a memorandum, and company practices. *Id.* at 832-833. We held that the plaintiffs' claims were preempted by ERISA. We concluded that neither a formal, written plan nor a separate fund is a prerequisite to the establishment or maintenance of an ERISA employee benefit plan. We concluded that a Department of Labor regulation, 29 C.F.R. § 2510.3-1(b)(3), which provides that payments of compensation out of an em-

ployer's general assets while an employee is on vacation are not made pursuant to an employee welfare benefit plan, was not controlling. *Barry, supra* at 837. Relying on *California Hosp. Ass'n* v. *Henning*, 569 F. Supp. 1544, 1546 (C.D. Cal. 1983), rev'd subsequent to our decision in *Barry*, 770 F.2d 856 (9th Cir. 1985), modified, 783 F.2d 946 (9th Cir.), cert. denied, 477 U.S. 904 (1986), we interpreted the Department of Labor regulation as applying only to an employer's discretionary practices and not to those contractually required. *Barry, supra* at 837-839 & 837 n.7. We need not decide now, whether, in light of the Ninth Circuit Court of Appeals' reversal of the District Court decision in *California Hosp. Ass'n, supra*, we should modify our interpretation of the Department of Labor regulation, because, in any event, the applicable portion of that regulation deals only with an employer's payments of compensation out of general assets to an employee *while he or she is on vacation*, see *California Hosp. Ass'n* v. *Henning*, 770 F.2d at 858, and does not apply to the present case which involves a lump-sum payment for unused vacation time upon discharge. Such payments are more akin to severance pay than to ordinary wages. See *Scott* v. *Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985).

Relying heavily on *Fort Halifax Packing Co.* v. *Coyne*, 482 U.S. 1 (1987), the Commonwealth argues that *Barry* v. *Dymo Graphic Syss., Inc., supra*, should not control the result in the present case. *Fort Halifax Packing Co.* was a civil action to recover severance pay due under a statute of the State of Maine. The statute required a one-time severance payment to employees in the event of a plant closing. The Supreme Court held that ERISA did not preempt the action, reasoning that the Maine statute "neither establishes, nor requires an employer to maintain, an employee welfare benefit 'plan' . . . ." *Id.* at 6.

Despite its holding, the Supreme Court's rationale in *Fort Halifax Packing Co.* supports rather than negates preemption in this case. The Court focused in that case on Congress's purpose in providing ERISA preemption: "An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligi-

bility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. . . . A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.* at 9-11.

In *Fort Halifax Packing Co.*, the Court based its conclusion that the Maine statute neither establishes nor requires an employer to maintain an employee benefit plan on the fact that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. . . . The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. . . . The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." *Id.* at 12. (Emphasis in original.)

There is a significant difference between *Fort Halifax Packing Co.* and the instant case, and that difference demonstrates why the purposes of the ERISA preemption provisions would not have been served in that case but are served in this case by a

holding that ERISA preempts application of the local statute. Here, the bank's assumption of the responsibility to pay stored-up vacation benefits to terminated employees necessitated correct computation on the basis of accurate records, and a periodic demand for adequate funds to meet commitments was foreseeable. An administrative scheme for dealing with those requirements without potentially conflicting or otherwise burdensome multi-State regulations is to be encouraged.

The significance of the factual distinction between *Fort Halifax Packing Co.* and this case is demonstrated by the discussion in the *Fort Halifax* case of the cases of *Holland* v. *Burlington Indus., Inc.*, 772 F.2d 1140 (4th Cir. 1985), summarily aff'd sub nom. *Brooks* v. *Burlington Indus., Inc.*, 477 U.S. 901, cert. denied sub nom. *Slack* v. *Burlington Indus., Inc.*, 477 U.S. 903 (1986), and *Gilbert* v. *Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir. 1985), summarily aff'd, 477 U.S. 901 (1986). The Court in *Fort Halifax Packing Co., Inc.*, *supra* at 17, characterized its holding that there was no ERISA "plan" as "completely consistent" with its holding in the *Burlington Indus.* cases that "a plan that pays severance benefits out of general assets is an ERISA plan." There was a "plan" in the *Burlington Indus.* cases, the *Fort Halifax* Court said, because "[t]he employer had made a commitment to pay severance benefits to employees as each person left employment. This commitment created the need for an administrative scheme to pay these benefits on an ongoing basis . . . ." *Id.* at 18 n.10. We conclude that a company policy providing for payments to employees upon discharge of unused vacation time, which policy is detailed in company handbooks, manuals, memoranda, and practices, as here, is an employee welfare benefit plan within ERISA.

Our conclusion that the bank's commitment constituted an ERISA "plan" does not end our inquiry. Section 1144(a) of 29 U.S.C. (1982) provides for preemption of State laws only in so far as they "relate to" employee benefit plans. The Commonwealth contends that, even if we are dealing here with an employee benefit plan, G. L. c. 149, § 148, does not "relate to" such a plan. We disagree. The Supreme Court has stressed that "the words 'relate to' should be construed expansively:

'[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Fort Halifax Packing Co., supra* at 8, quoting *Shaw* v. *Delta Air Lines, Inc.,* 463 U.S. 85, 96-97 (1983). *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U.S. 41, 47 (1987). *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U.S. 724, 739 (1985). For ERISA to preempt a State law, therefore, it is not necessary that the State law be specifically designed to affect employee benefit plans, *Pilot Life Ins. Co.* v. *Dedeaux, supra* at 46, nor is it necessary for preemption that the State law be in conflict with the substantive requirements of ERISA. *Metropolitan Life Ins. Co.* v. *Massachusetts, supra* at 739. *Commonwealth* v. *Federico,* 383 Mass. 485, 488 (1981).

It is true that a State law may affect an employee benefit plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw* v. *Delta Air Lines, Inc., supra* at 100 n.21. See *Firestone Tire & Rubber Co.* v. *Neusser,* 810 F.2d 550, 552-556 (6th Cir. 1987); *Sommers Drug Stores Co. Employee Profit Sharing Trust* v. *Corrigan Enters., Inc.,* 793 F.2d 1456, 1465-1468 (5th Cir. 1986), cert. denied, 479 U.S. 1034 & 1089 (1987). The Commonwealth argues that a criminal prosecution under G. L. c. 149, § 148, "punishes employers for engaging in prohibited acts; it does not 'relate to' an ERISA plan itself" and therefore any connection between the statute and the bank's plan is too tenuous, remote, and peripheral to justify preemption. However, we are satisfied that a statute that applies to nonpayment of vacation benefits upon termination of employment pursuant to an employee benefit plan, as c. 149, § 148, does, "relate to" that plan. In such a case, the statute as applied represents an attempt by the State to enforce the provisions of the plan. State laws that attempt to enforce benefit plans are preempted. See *Martori Bros. Distribs.* v. *James-Massengale,* 781 F.2d 1349, 1358 (9th Cir. 1986), modified, 791 F.2d 799 (9th Cir.), cert. denied, 479 U.S. 949 & 1018 (1986). The fact that G. L. c. 149, § 148, also applies to wages and agreed-upon vacation benefits that may not arise under an "employee benefit plan" is irrelevant to the "relate to" analysis, which focuses on the

effect of the statute as applied in a particular case. "It would have been unnecessary to exempt generally applicable state criminal statutes from pre-emption in [§ 1144] (b), for example, if [§ 1144] (a) applied only to state laws dealing specifically with ERISA plans." *Shaw* v. *Delta Air Lines, Inc., supra* at 98. Thus, although every prosecution under G. L. c. 149, § 148, is not preempted, see *Shaw, supra* at 97 n.17, this one is. Our conclusion finds support in *Commonwealth* v. *Federico, supra,* where we held that a criminal prosecution under G. L. c. 151D, § 11, penalizing, among other things, delinquent contributions to employee benefit plans, is preempted by ERISA.

The Commonwealth further argues that, even if G. L. c. 149, § 148, as applied, "relates to" an employee benefit plan, it still is not preempted because it does not "purport to regulate, directly or indirectly, the terms and conditions of employee benefit plans." The genesis of this "purport to regulate" test is the definition of "State" in 29 U.S.C. § 1144(c)(2) (1982). "State" is there defined as "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." The Commonwealth asserts that the "purport to regulate" test is narrower than the "relate to" test, citing *Martori Bros., supra* at 1359. But see *Holland, supra* at 1147-1148 ("[g]iven the explicitly broad nature of ERISA preemption, we are not inclined to limit ERISA's coverage through a restrictive reading of this term"); *Authier* v. *Ginsberg,* 757 F.2d 796, 799 n.4 (6th Cir.), cert. denied, 474 U.S. 888 (1985).

In any case, we believe that the State criminal statute, as applied in this case, would meet the "purport to regulate" test, as well as the "relate to" test. "It is axiomatic . . . [that] the power to regulate includes the power to enforce. Here the state is attempting directly to regulate the terms and conditions of a [welfare benefit] plan by using its criminal law to obtain compliance with those terms and conditions." (Citation omitted.) *Cairy* v. *Superior Court,* 192 Cal. App. 3d 840, 843 (1987).

Finally, the Commonwealth argues that this prosecution is not preempted because of 29 U.S.C. § 1144(b)(4) (1982), which provides that no "generally applicable criminal law of a State" shall be preempted. In *Commonwealth* v. *Federico*, *supra*, we decided that a prosecution under G. L. c. 151D, § 11, was preempted in spite of the exception for any "generally applicable criminal law." In holding that the statutory exemption did not apply, we said: "The § 1144(b)(4) exception from preemption for 'generally applicable' State criminal laws appears designed to prevent otherwise criminal activity from being immunized from prosecution simply because the activity 'relates to' an employee benefit plan. The exception seems directed toward criminal laws that are intended to apply to conduct generally — criminal laws against larceny and embezzlement, for example. By virtue of § 1144(b)(4), a State is not precluded from prosecuting, under a theft statute applicable to the entire population, an employer who steals money from an employee benefit plan, simply because the theft involved such a plan. But by limiting the § 1144(b)(4) exception to criminal laws of *general* applicability, Congress apparently intended to preempt State criminal statutes aimed specifically at employee benefit plans" (emphasis in original). *Id.* at 490.

The Commonwealth emphasizes the statement in *Federico* that "Congress apparently intended to preempt State criminal statutes aimed *specifically* at employee benefit plans" (emphasis added). *Id.* Unlike G. L. c. 151D, § 11, argues the Commonwealth, G. L. c. 149, § 148, is not specifically aimed at employee benefit plans, but rather is a nonpayment of *wages* statute.

The defendant, on the other hand, emphasizes the statement that "[t]he exception seems directed toward criminal laws that are intended to apply to conduct generally — criminal laws against larceny and embezzlement, for example." *Federico*, *supra*. The exception, he argues, applies to laws such as those prohibiting larceny and embezzlement, which apply to all persons in any context, and not to criminal laws limited to the employer-employee relationship, and specifically aimed at requiring the payment of employee compensation.

*Federico* has been widely followed on the issue of what constitutes a "generally applicable criminal law." See *Sforza* v. *Kenco Constructional Contracting, Inc.*, 674 F. Supp. 1493, 1495 (D. Conn. 1986); *Baker* v. *Caravan Moving Corp.*, 671 F. Supp. 337, 341-342 (N.D. Ill. 1983); *Trustees of Sheet Metal Workers' Int'l Ass'n Prod. Workers' Welfare Fund* v. *Aberdeen Blower & Sheet Metal Workers, Inc.*, 559 F. Supp. 561, 563 (E.D.N.Y. 1983); *Cairy* v. *Superior Court*, 192 Cal. App. 3d 840, 843-844 (1987); *State* v. *Burten*, 219 N.J. Super. 339, 348-351 (1986), aff'd, 219 N.J. Super. 156 (1987); *People* v. *Art Steel Co.*, 133 Misc. 2d 1001, 1007-1009 (N.Y. Crim. Ct. 1986). See also *Calhoon* v. *Bonnabel*, 560 F. Supp. 101, 108-109 (S.D.N.Y. 1982) (criticizing *Goldstein* v. *Mangano*, 99 Misc. 2d 523, 532 [N.Y. Civ. Ct. 1978], result disagreed with in *Federico, supra* at 490). Cf. *Blue Cross & Blue Shield* v. *Peacock's Apothecary, Inc.*, 567 F. Supp. 1258, 1276 (N.D. Ala. 1983) (law aimed primarily at pharmacists not "generally applicable"). But see *Upholsterer's Int'l Union* v. *Pontiac Furniture, Inc.*, 647 F. Supp. 1053, 1056 (C.D. Ill. 1986); *National Metalcrafters* v. *McNeil*, 602 F. Supp. 232, 237 (N.D. Ill. 1985), rev'd on other grounds, 784 F.2d 817 (7th Cir.).

Although we agree with the Commonwealth that G. L. c. 151D, § 11, the statute we held to be preempted in *Federico*, is aimed more specifically at employee benefit plans than G. L. c. 149, § 148, we conclude that G. L. c. 149, § 148, is not so general as to fall within the exception to preemption provision provided by Congress. Because our statute is limited to the nonpayment of "wages" by an employer to an employee, including agreed-upon vacation payments which will often be funded from "employee benefit plans," prosecution under the statute is not saved from preemption by the exception for "generally applicable criminal laws."

We therefore answer the reported question, "Prosecution under G. L. c. 149, § 148, of an employer who has failed to make agreed-upon vacation payments is preempted if the payments were to be made pursuant to an 'employee benefit plan.'"

Since the stipulated facts in this case establish the existence of an "employee benefit plan" pursuant to which payments for unused vacation should have been, but were not, made to discharged employees, prosecution of the defendant is preempted by ERISA.